35 F.3d 567
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Matthew KEATING; and Edmund Flores, Defendants-Appellants.
 Nos. 93-1782, 93-1877.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Matthew Keating challenges his sentence and the voluntariness of his guilty plea. Edmund Flores challenges his sentence and the district court's resolution of disputed facts. We affirm.
 
 I.
 
 2
 Defendants-appellants Matthew Keating ("Keating") and Edmund Flores ("Flores") pled guilty on March 16, 1993, to Count 1 of a Superseding Indictment charging Keating, Flores, Robert Flores, William Bricault, Lorenzo Hughes, Dean Moored and Michael Cruz with conspiring to distribute and possess with the intent to distribute marijuana and cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846. Flores also pled guilty to Count 13, knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c)(1).
 
 
 3
 Detective Dennis McMahan ("Detective McMahan") testified at Flores' sentencing hearing that Flores had supplied marijuana and cocaine to Keating, and five coconspirators subordinate to Keating, for more than 11 months. Specifically, Detective McMahan noted that: he had repeatedly purchased illegal drugs from Flores, both directly and indirectly; Flores and coconspirator Michael Cruz had financed a trip to Arizona to purchase cocaine for distribution; Flores repeatedly told an informant, Norm Wilson, that he had quantities of cocaine and marijuana available for sale; Flores told Wilson, on April 30, 1992, that coconspirator Cruz possessed 6 kilograms of cocaine; Flores told the undercover officer, on August 17, 1992, that he was going to "hook up" with another 9-10 ounces of cocaine; and, coconspirator Dean Moored told the undercover officer that Flores could deal in half-kilogram quantities of cocaine. Detective McMahan estimated that Flores sold 9-18 ounces of cocaine per week from April 1992 until September 17, 1992; Detective McMahan estimated that, prior to April 1992, Flores sold 3-4 ounces of cocaine per week (since December 1990 or January 1991). FBI Special Agent Mark Miller corroborated Detective McMahan's estimations.
 
 
 4
 The district court concluded that Flores should be held accountable for distributing, both directly and indirectly through his coconspirators, more than 5 kilograms of cocaine. After concluding that Flores was a leader and organizer subject to an enhancement for his role in the conspiracy, the district court found Flores' applicable guideline range to be 135-168 months. The district court sentenced Flores to 156 months imprisonment on Count 1, 60 months on Count 13 (the sentences to run consecutively), ordered five years of supervised release, fined Flores $5,000, and imposed a mandatory special assessment of $100.
 
 
 5
 Keating raised two objections to his presentence report at his sentencing hearing on May 27, 1993. First, Keating objected to the two-level increase for possession of a dangerous weapon since, he claimed, the informant had suggested that he carry the gun. The district court rejected Keating's claim. Keating also objected to the three-level increase for supervising or managing a criminal activity involving five or more participants pursuant to U.S.S.G. Sec. 3B1.1(b). The district court rejected Keating's objection, but noted that the three-level increase would not affect his sentence because his sentencing range (151-188 months) was significantly lower than the applicable 240-month statutory minimum.
 
 
 6
 In light of Keating's cooperation with the government, the United States filed a "Petition For Downward Departure Pursuant to Section 5K1.1 Based on Substantial Assistance." The district court thereafter sentenced Keating to 180 months imprisonment, to be followed by 10 years of supervised release, fined Keating $5,000, and imposed a mandatory special assessment of $50.
 
 
 7
 Keating and Flores timely appealed.
 
 II.
 
 8
 District Court's Failure to Resolve Controverted Items
 
 
 9
 Flores claims that the district court violated Federal Rule of Criminal Procedure 32 by failing to resolve controverted matters at his sentencing hearing. The United States, in turn, claims that "there is no indication that the court, in fact, relied on the unresolved, controverted items. To the contrary, when considering the nature of these items and the complete absence of any evidence to support the defendant's version, it is clear that these items had no effect on the sentence and the district judge implicitly indicated this conclusion." Appellee's Brief at 8-9.
 
 
 10
 Flores challenged 25 items in his presentence report. After reviewing the presentence report and the parties' respective positions on the controverted items, the district court judge "tentatively resolved" the 25 controverted items. The district court then invited the parties to challenge the court's tentative findings. See Joint Appendix at 279-80 ("Do either of the parties want to present any evidence that would provide the Court with something more than mere denials of these various points raised in the investigation?"). An extensive hearing ensued:
 
 
 11
 Okay. On controverted item number three, I resolve that item consistent with the suggestion of the probation officer.... [T]he March transaction was different in time from the April trip, the kilogram mentioned in paragraph 24 stands.
 
 
 12
 ....
 
 
 13
 I think it's not terribly substantial evidence, frankly, of a supervisory relationship in any event, but I think there is support for the officer's observation in paragraph 25 and that's resolved in favor of the officer's suggestion.
 
 
 14
 ....
 
 
 15
 [Flores] already admitted under oath that he was in possession of a firearm during a drug transaction. What possible difference could this paragraph make to my decision on the sentencing? I can't see any offhand. Tell me if I'm wrong.
 
 
 16
 ....
 
 
 17
 I'm strongly inclined to believe that the 5 kilograms in the possession of Mr. Cruz represents a quantity of drugs for which the defendant is also accountable
 
 
 18
 ....
 
 
 19
 The jointly undertaken criminal activity here between this defendant and Mr. Cruz was the distribution of cocaine. Mr. Cruz's possession of cocaine was a necessary prerequisite to further that criminal activity on the part of this defendant.
 
 
 20
 ....
 
 
 21
 ... Although I don't think adding that 5 kilogram quantity to the 6 kilogram quantity for which the defendant is accountable here would take it beyond a level 32[,] I think a reasonable accounting of this defendant's direct and relevant conduct ... during the year 1992 ... is far closer to the level 10 or 12 kilograms than it is to the minimum level of 5.
 
 
 22
 He certainly positively and unquestionably qualifies at a level 32 drug quantity based on evidence of record, and I so determine.
 
 
 23
 ....
 
 
 24
 The rest of the objections I think are either unnecessary to resolve or are mechanical.
 
 
 25
 The Court will solidify then its calculations in accord with what the probation officer suggested, which is a level 32 plus 4 for organizational responsibilities to a level 36, reduced by 3 for timely acceptance of responsibility, level 33....
 
 
 26
 Joint Appendix at 290-336.
 
 
 27
 The relevant Federal Rule of Criminal Procedure provides:
 
 
 28
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing....
 
 
 29
 Fed.R.Crim.P. 32(c)(3)(D).
 
 
 30
 "Rule 32(c)(3)(D) is intended to ensure that the defendant's concerns over disputed allegations in the presentence report have been considered by the district court whose reasoning is shown on the record for both the benefit of the defendant and for us on review." United States v. Mandell, 905 F.2d 970, 974 (6th Cir.1990) (citation omitted). "A defendant demanding a resentencing due to a violation of Rule 32(c)(3)(D) needs only to show that '(1) allegations of inaccuracy were before the sentencing court and (2) the court failed to make findings regarding the controverted matters or a determination that the disputed information would not be used in sentencing.' " Id. at 973 (citation omitted). " 'The showing necessary to demonstrate a constitutional violation should not be confused with that required to make out a Rule 32 violation. Resentencing may be necessary under the Rule even though a defendant's right to due process has not been violated.' " Id. at 974 (citation omitted). Here, Flores is not asserting a due process violation; rather, he is seeking resentencing because, he claims, the district court misapplied Rule 32(c)(3)(D).
 
 
 31
 Though defense counsel questioned items in Flores' presentence report, counsel presented little corroborating evidence. The district court resolved many of the items that Flores' counsel raised at the sentencing hearing, and expressly noted that the resolution of the remaining items was not necessary because the remaining items were insignificant and would not affect Flores' guideline range. Because the district court properly classified many of Flores' controverted items as not being material to the establishment of the proper guideline range, the district court did not violate Federal Rule of Criminal Procedure 32 by failing to resolve each of the challenged items individually. We therefore reject Flores' first assignment of error.
 
 Quantity of Drugs Attributable to Flores
 
 32
 Flores argues that the district court "erred in not correctly determining the scope of the Appellant's conduct within the conspiracy, and by incorrectly determining the estimate of the amount of drugs involved in the offense." Flores' Brief at 3. Specifically, Flores claims:
 
 
 33
 [T]he District Court erred in including within the Appellant's relevant conduct calculation amounts of drugs owned by his supplier.
 
 
 34
 ....
 
 
 35
 The Appellant next contends that the District Court erred in its determination of the estimated quantity of drugs involved in the offense.
 
 
 36
 ....
 
 
 37
 Finally, the Appellant contends that the sentencing court should not have simply relied upon the hearsay testimony of defendant Keating in setting the Appellant's offense leve [sic], as Keating's testimony was unreliable.
 
 
 38
 Id. at 3-8.
 
 
 39
 The district court determined that Flores should be held accountable for the six kilograms possessed by coconspirator Michael Cruz, and the drugs that he personally distributed (directly and indirectly through his subordinates) in furtherance of the conspiracy.
 
 
 40
 The relevant sentencing guideline provides:
 
 
 41
 Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the following:
 
 
 42
 ....
 
 
 43
 (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,
 
 
 44
 that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense....
 
 
 45
 U.S.S.G. Sec. 1B1.3(a).
 
 
 46
 Accordingly, where the quantity of drugs seized does not reflect the scale of the offense, the sentencing court must approximate the quantity that should be attributed to the defendant. See U.S.S.G. Sec. 2D1.1, comment. (n. 12) ("Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved."). Where the amount is uncertain, the district court is encouraged to "err on the side of caution." United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 498 U.S. 906, 989, 990 (1990). See also United States v. Zimmer, 14 F.3d 286, 290 (6th Cir.1994) (a district court "is not free to estimate the 'highest' number possible"). In arriving at a total quantity, the district court must "explicitly set forth the evidence on which it relies," and make specific findings that are supported by a preponderance of the evidence. United States v. Baro, 15 F.3d 563, 569 (6th Cir.1994).
 
 
 47
 "[Q]uantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. Sec. 1B1.3, comment. (backg'd.). A district court's determination that certain acts are part of a common scheme or plan is a factual determination that must be upheld on appeal unless clearly erroneous. United States v. Miller, 910 F.2d 1321, 1327 (6th Cir.1990), cert. denied, 498 U.S. 1094 (1991). Whether the facts found by the district court warrant the application of a particular guideline provision is a legal question to be reviewed de novo by the appellate court. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991).
 
 
 48
 When determining the base offense level, all drug quantities--including quantities charged in dismissed counts and uncharged quantities that were part of the same course of conduct or common scheme--may be taken into account. United States v. Miller, 910 F.2d at 1327. In fact, a trial judge has the discretion to consider "any and all" evidence pertaining to the quantity of drugs involved. United States v. Moreno, 899 F.2d 465, 474 (6th Cir.1990). See also U.S.S.G. Sec. 1B1.3, comment. (n. 2) ("The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision.").
 
 
 49
 Testimony at Flores' sentencing hearing revealed that coconspirator Cruz possessed, at one point, more than six kilograms of cocaine. Though Flores maintains that he should not be held accountable for this cocaine, the district court properly concluded that Flores and Cruz had a business relationship that went beyond that of customer-supplier. Flores helped finance a trip to Arizona to obtain cocaine, and acknowledged that he was the only conspirator who had direct access to Cruz; all other conspirators had to go through him. Flores, in fact, recruited many of the coconspirators. Accordingly, the district court properly concluded that Flores should be held accountable for the six kilograms of cocaine that Cruz possessed in furtherance of the conspiracy.
 
 
 50
 Though Flores argues that he did not personally (directly and indirectly through his subordinates) distribute more than five kilograms of cocaine during the conspiracy, statements made by the confidential informant and by coconspirator Keating corroborate the district court's determination. Moreover, the law enforcement agent in charge of the investigation estimated that Flores distributed 3-4 ounces of cocaine per week prior to April 1992, and 9-18 ounces per week from April 1992 until his arrest in September 1992. These figures, viewed conservatively, result in more than 5 kilograms of cocaine being distributed prior to Flores' arrest. Accordingly, even if we were to conclude that the district court erred by including the six kilograms of cocaine held by coconspirator Cruz, we must nevertheless reject Flores' assignment of error because the evidence reveals that Flores distributed more than five kilograms of cocaine and was, therefore, properly classified at base offense level 32 pursuant to U.S.S.G. Sec. 2D1.1(c)(6).
 
 
 51
 Though Flores argues that Keating's incriminating statements were unreliable hearsay, Keating's statements were corroborated by his coconspirators, by the confidential informant, and by law enforcement officers. Moreover, the district court had the opportunity to assess Keating's credibility at his guilty plea proceeding. In United States v. Silverman, 976 F.2d 1502 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 1595 (1993), this court held that "the law has long been established that various types of hearsay information may be considered by the sentencing judge." Id. at 1511 (citations omitted). In fact, "[i]t is the law that even illegally obtained or other inadmissible evidence may be considered by the sentencing judge[.]" Id. (citations omitted). "So long as the evidence in the presentence report bears 'some minimal indicia of reliability in respect of defendant's right to due process,' the district court, after adoption of the guidelines, may still continue to consider and rely on hearsay evidence without any confrontation requirement." Id. (citations omitted). Because Keating's hearsay statements were corroborated, and because Flores was able to cross-examine the corroborating witnesses at his sentencing hearing, the district court did not err by considering Keating's statements. We therefore reject Flores' second assignment of error.
 
 
 52
 District Court's Section 3B1.1(a) Determination
 
 
 53
 Flores claims that the district court erred by finding that he was an organizer or leader of a criminal activity involving five or more participants pursuant to U.S.S.G. Sec. 3B1.1(a).[1] See Flores' Brief at 10 ("The Appellant would contend that this is not a proper basis for enhancement, as there is no evidence to show that the Appellant controlled his co-defendants.") (emphasis in original). We disagree.
 
 
 54
 The evidence presented in Flores' presentence report, and at his plea and sentencing hearings, reveals that Flores "recruited and exercised authority over Robert Flores, Lorenzo Hughes, William Bricault, Matthew Keating and Jay Thomas in various drug transactions." Joint Appendix at 130. See also Flores' Presentence Investigation Report at 10 ("Based upon EDMUND FLORES exercising the decision making authority, his recruitment of accomplices, his claimed right to the largest share of the fruits of the crime, and the degree of control and authority he exercised over others, it is suggested that there be an increase of four levels per 3B1.1(a)."). Moreover, Flores was the only conspirator who had direct access to coconspirator Cruz.
 
 
 55
 The commentary to U.S.S.G. Sec. 3B1.1 provides (in relevant part):
 
 
 56
 In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy....
 
 
 57
 U.S.S.G. Sec. 3B1.1, comment. (n. 3) (Nov. 1992). A defendant's role as a leader or organizer must be proved by a preponderance of the evidence, United States v. Castro, 908 F.2d 85, 90 (6th Cir.1990), and the district court's finding of organizer or leader status must be upheld unless clearly erroneous. United States v. Williams, 962 F.2d 1218, 1226 (6th Cir.), cert. denied, 113 S.Ct. 264 (1992).
 
 
 58
 The evidence reveals that Flores supplied cocaine to more than five coconspirators, and controlled their access to his supplier, coconspirator Cruz. Moreover, Flores directed his coconspirators' actions and oversaw the interstate acquisition and transportation of cocaine and marijuana. Under these circumstances, the district court properly concluded that Flores warranted an upward departure pursuant to U.S.S.G. Sec. 3B1.1(a). We therefore reject Flores' third assignment of error.
 
 
 59
 Imposition of the Statutory Minimum Sentence
 
 
 60
 Keating maintains, for the first time on appeal, that the United States failed to present evidence at his guilty plea and sentencing hearings to support the imposition of the mandatory minimum 240-month sentence (pursuant to 21 U.S.C. Sec. 841(b)(1)(A)). Generally, "[i]ssues not presented to the district court but raised for the first time on appeal are not properly before the court." J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co., 936 F.2d 1474, 1488 (6th Cir.1991) (citation omitted). We have, on occasion, deviated from the general rule in " 'exceptional cases or particular circumstances' or when the rule would produce 'a plain miscarriage of justice.' " Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.), cert. denied, 488 U.S. 880 (1988) (citations omitted).
 
 
 61
 Appended to Keating's Rule 11 Plea Agreement are the government's proposed sentencing range calculations. Though the government proposed an adjusted offense level of 31 (distribution of 5-15 kilograms of cocaine, plus two levels for possession of a dangerous weapon, less three levels for acceptance of responsibility), the worksheets note the applicability of the mandatory 240-month minimum sentence. See Joint Appendix at 92 ("Based on drug quantity and prior drug felony conviction, 240 month mandatory minimum sentence applicable.").
 
 
 62
 At his guilty plea hearing, the district court advised Keating that he faced a statutory minimum term of 240 months. Moreover, the government filed a "Notice of Enhanced Penalty" which "provide[d] notice to the defendant that the evidence with respect to Count 1 of the Indictment will include drug quantities of 5 kilograms or more of cocaine and that such evidence could give rise to enhanced penalties" pursuant to 21 U.S.C. Sec. 841(b)(1)(A). Joint Appendix at 44.
 
 
 63
 Notwithstanding the 240-month statutory minimum, the district court reduced Keating's sentence to 180 months pursuant to the United States' "Petition for Downward Departure Pursuant to Section 5K1.1 Based on Substantial Assistance." Because Keating was responsible for distributing 5-15 kilograms of cocaine, we reject Keating's first assignment of error in light of his previous drug trafficking conviction.
 
 Voluntariness of Keating's Guilty Plea
 
 64
 Keating challenges the voluntariness of his guilty plea because the district court failed to inform him that his guideline range could be enhanced if he was found to be a manager or supervisor. See Keating's Brief at 10 ("Defendant was unaware of the full consequences of his plea, as he was not informed of his designation as a manager or supervisor until he received the presentence report, which was after his plea was enter [sic].") (emphasis in original). Though Keating objected to the proposed enhancement for supervisor status in district court, he did not object to the voluntariness of his plea. Accordingly, we review for plain error. See Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").
 
 
 65
 Because a guilty plea must be voluntary and intelligent to satisfy due process requirements, Boykin v. Alabama, 395 U.S. 238, 242-43 (1969), a defendant must be aware of the nature and elements of the charges against him and the possible punishment that he faces. Id. at 243-44. Keating was aware that he would be sentenced to no less than 240 months (absent a petition for downward departure based on substantial assistance). Accordingly, the district court properly noted that Keating's "role in the offense" enhancement did not affect his sentencing range.
 
 
 66
 Moreover, the Rule 11 Plea Agreement that Keating signed provided:
 
 
 67
 The parties acknowledge that the court will determine the applicable sentencing factors at sentencing and that the court's determination will affect the sentence range under the sentencing guidelines....
 
 
 68
 ....
 
 
 69
 Defendant understands that the Court is not bound to follow any recommendation or request by the government identified in this plea agreement. Further, defendant understands that if the Court refuses to follow such a recommendation or request, defendant will not be given the opportunity to withdraw the plea of guilty.
 
 
 70
 Keating's Rule 11 Plea Agreement at 2-9.
 
 
 71
 Because Keating was properly advised of his constitutional rights, the nature of the charges against him, and the potential punishment that he faced by pleading guilty, and because Keating's "role in the offense" adjustment did not affect his sentence in light of the applicable 240-month mandatory minimum sentence that he faced, we reject Keating's second assignment of error.
 
 
 72
 We AFFIRM.
 
 
 
 1 U.S.S.G. Sec. 3B1.1(a) provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels."